**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**Southern Division**

| | |
|---|---|
| **CINETEL FILMS, INC.** | ) |
| | ) |
| **and** | ) |
| | ) |
| **FAMILY OF THE YEAR** | ) |
| **PRODUCTIONS, LLC** | ) |
| | ) |
| **Plaintiffs,** | ) |
| | ) |
| **v.** | )   **Case 8:11-cv-02438-JFM** |
| | ) |
| **DOES 1-1,052** | ) |
| | ) |
| **Defendants.** | ) |
| ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯ | ) |

<u>**MOTION FOR LEAVE TO TAKE DISCOVERY**</u>
<u>**PRIOR TO RULE 26(f) CONFERENCE**</u>

Plaintiffs, by counsel, pursuant to the Federal Rules of Civil Procedure, respectfully

move this Court for leave to take discovery prior to the Rule 26(f) conference for the reasons

stated in its accompanying Memorandum of Points & Authorities filed contemporaneously

herewith.  Plaintiffs request a hearing on this matter, if necessary, on an expedited basis.

Respectfully submitted,
CINETEL FILMS, INC.
FAMILY OF THE YEAR PRODUCTIONS, LLC

DATED:  November 21, 2011

By:   /s/ _____
Thomas M. Dunlap, MSB #27525
DUNLAP, GRUBB & WEAVER, PLLC
5335 Wisconsin Avenue NW, Suite 440
Washington, D.C. 20015-2052
Telephone: 202-316-8558
Facsimile: 202-318-0242
tdunlap@dglegal.com
*Attorney for the Plaintiffs*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**Southern Division**

| | |
|---|---|
| **CINETEL FILMS, INC.** | ) |
| | ) |
|     **and** | ) |
| | ) |
| **FAMILY OF THE YEAR** | ) |
| **PRODUCTIONS, LLC** | ) |
| | ) |
|     **Plaintiffs,** | ) |
| | ) |
| **v.** | )    **Case 8:11-cv-02438-JFM** |
| | ) |
| **DOES 1-1,052** | ) |
| | ) |
|     **Defendants.** | ) |
| _____ | ) |

**MEMORANDUM OF POINTS AND AUTHORITIES**
**IN SUPPORT OF MOTION FOR LEAVE TO TAKE DISCOVERY**
**PRIOR TO RULE 26(f) CONFERENCE**

## TABLE OF CONTENTS

I. INTRODUCTION ...................................................................................................................1

II. ARGUMENT ......................................................................................................................2

    A. PRECEDENTS OF COURTS ALLOWING DISCOVERY TO IDENTIFY DOE

    DEFENDANTS ......................................................................................................................2

    B. OVERVIEW OF PLAINTIFF'S ALLEGATIONS AND FACTUAL SHOWINGS .....5

        1. Overview of the P2P Infringing Activity.................................................................6

        2. Preliminary Identification of Defendants.................................................................8

    C. PLAINTIFF HAS SHOWN GOOD CAUSE FOR THE DISCOVERY AND HAS

    MADE A PRIMA FACIE SHOWING THAT DEFENDANTS DID INFRINGE

    PLAINTIFF'S COPYRIGHTS .......................................................................................12

III. CONCLUSION.................................................................................................................16

## TABLE OF AUTHORITIES

**Cases**

A & M Records, Inc. v. Napster, Inc., 239 F.3d 1004 (9th Cir. 2001) ..........................................13

Achte/Neunte Boll Kino Beteiligungs GMBH & CO KG v. Does 1- 4,577,

    Case No. 10-453 (D.D.C.) ........................................................................................4

Arista Records LLC v. Does 1-19, 551 F. Supp. 2d 1 (D.D.C. Apr. 28, 2008)........................4, 14

Arista Records, LLC v. Doe No. 1, 254 F.R.D. 480 (E.D.N.C. 2008) ..........................................15

Call of the Wild Movie, LLC v. Does 1-358, Case No. 10-455 (D.D.C.) .......................................4

Columbia Ins. Co. v. Seescandy.com, 185 F.R.D. 573, 578-80 (N.D. Cal. 1999) ...................4, 12

Cornered, Inc. v. Does 1-2,177, Case No. 10-1476 (D.D.C.) .........................................................4

Couch v. U.S., 409 U.S. 322 (1973) .............................................................................................15

Dean v. Barber, 951 F.2d 1210 (11th Cir. 1992) ...........................................................................3

Digital Content, Inc. v. Does 1-37, Civil Action No. 10-cv-03403-AW (D. Md.)........................4

Donkeyball Movie, LLC v. Does 1-171, Case No. 10-1520 (D.D.C.) .............................................4

Elvis Presley Enter., Inc. v. Passport Video, 349 F.3d 622 (9th Cir. 2003) .................................14

Entm't Tech. Corp. v. Walt Disney Imagineering, No. Civ. A. 03-3546, 2003 WL 22519440

    (E.D. Pa. Oct. 2, 2003)...........................................................................................5

Equidyne Corp. v. Does 1-21, 279 F. Supp. 2d 481 (D. Del. 2003)................................................3

G2 Productions LLC v. Does 1-83, Case No. 10-41 (D.D.C.) ........................................................4

Gary v. United States, No. 3:97-CV-658, 1998 WL 834853 (E.D. Tenn.) ...................................15

Gillespie v. Civiletti, 629 F.2d 637 (9th Cir. 1980)........................................................................3

Guest v. Leis, 255 F.3d 325 (6th Cir. 2001) .................................................................................14

In re Aimster Copyright Litig., 334 F.3d 643 (7th Cir. 2003) ................................................ 12-13

In re Gren, 633 F.2d 825 (9th Cir. 1980) .............................................................................. 15-16

Interscope Records v. Does 1-14, 558 F. Supp. 2d 1176 (D. Kan. 2008)......................................14

K-Beech, Inc. v. John Does 1-32, Civil Action No. DKC 11-1764 (D. Md.) ................................4

Laxalt v. McClatchy, 809 F.2d 885 (D.C. Cir 1987)....................................................................15

Lions Gate Films, Inc., et al. v. Does 1-5, Case No. 05-386 (EGS) (D.D.C.) ................................4

Lynn v. Radford, No. 99-71007, 2001 WL 514360 (E.D. Mich. 2001) ........................................15

Maclin v. Paulson, 627 F.2d 83 (7th Cir. 1980) ...........................................................................3

Maverick Entertainment Group, Inc. v. Does 1-1,000, Case No. 10-569 (D.D.C.)........................4

Metro-Goldwyn-Mayer Pictures Inc., et al. v. Does 1-10, Case No. 04-2005 (JR) (D.D.C.) .........4

Munz v. Parr, 758 F.2d 1254 (8th Cir. 1985) ...............................................................................3

Murphy v. Goord, 445 F.Supp.2d 261 (W.D.N.Y. 2006)...............................................................2

Pleasants v. Allbaugh, 208 F.R.D. 7 (D.D.C. 2002).....................................................................15

Pod-Ners, LLC v. Northern Feed & Bean of Lucerne LLC, 204 F.R.D. 675 (D. Colo. 2002) .....13

Qwest Comm. Int'l, Inc. v. WorldQuest Networks, Inc., 213 F.R.D. 418 (D. Colo. 2003) ............5

Rocker Mgmt. LLC v. John Does, No. 03-MC-33 2003 WL 22149380 (N.D. Cal. 2003).............4

Semitool, Inc. v. Tokyo Electron Am., Inc., 208 F.R.D. 273 (N.D. Cal. 2002) .......................5, 14

Smith v. Maryland, 442 U.S. 735 (1979)......................................................................................15

Sony Music Entm't, Inc. v. Does 1–40, 326 F. Supp. 2d 556 (S.D.N.Y. 2004)...................... 14-15

Twentieth Century Fox Film Corporation, et al. v. Does 1-9, Case No. 04-2006 (EGS) (D.D.C.).4

UMG Recordings v. Does 1-4, 64 Fed. R. Serv. 3d (Callaghan) 305 (N.D. Cal. March 6, 2006) ..3

UMG Recordings, et al. v. Does 1-199, Case No. 04-093 (CKK) (D.D.C.) ..................................4

UMG Recordings, Inc. v. Doe, 2008 WL 4104214 (N.D. Cal. 2008) ..................................... 13-14

U.S. v. Hambrick, 55 F. Supp. 2d 504 (W.D. Va. 1999) ..............................................................15

U.S. v. Kennedy, 81 F. Supp. 2d 1103 (D. Kan. 2000) ...................................................................15

U.S. v. Miller, 425 U.S. 435 (1976)..........................................................................................15

Valentin v. Dinkins, 121 F.3d 72 (2d Cir. 1997) ....................................................................... 2-3

Voltage Pictures, LLC v. Does 1-5,000, Case No. 10-00873 (D.D.C.)...........................................4

Wakefield v. Thompson, 177 F.3d 1160 (9th Cir. 1999)...................................................................2

Warner Bros. Records, Inc. v. Does 1-6, 527 F.Supp.2d 1 (D.D.C. 2007).................................3, 5

West Bay One, Inc. v. Does 1- 2,000, Case No. 10-481 (D.D.C.) ..................................................4

Worldwide Film Entertainment LLC v. Does 1-749, Case No. 10-38 (D.D.C.) ............................4

Yokohama Tire Corp. v. Dealers Tire Supply, Inc., 202 F.R.D. 612 (D. Ariz. 2001)....................5

**Statutes**

17 U.S.C. §106...........................................................................................................................12

**Miscellaneous**

Melville B. Nimmer & David Nimmer, Nimmer on Copyright, § 14.06[A] (2003) .....................14

## MEMORANDUM OF POINTS AND AUTHORITIES

I. INTRODUCTION

Plaintiff, a film producer and motion picture copyright holder, filed its Complaint to stop Defendants from copying and distributing to others over the Internet unauthorized copies (files) of the motion pictures for which it holds the exclusive licensing and copyrights, specifically "*I Spit on Your Grave*" (the "Motion Picture"). Using so-called "peer-to-peer" ("P2P") file "swapping" networks, Defendants' infringements allow them and untold others unlawfully to obtain and distribute for free the copyrighted Motion Picture that Plaintiff invested substantial sums of money to make. Plaintiff sued Defendants as "Doe" Defendants because Defendants committed their infringements using on-line pseudonyms ("user names" or "network names"), not their true names. At this point, Plaintiff has only been able to identify the Doe Defendants by their Internet Protocol ("IP") address and the date and time of alleged infringement.

The only way that Plaintiff can determine Defendants' actual names is from the non-party Internet Service Providers ("ISPs") to which Defendants subscribe and from which Defendants obtain Internet access, as this information is readily available to the ISPs from documents they keep in the regular course of business. Accordingly, Plaintiff seeks leave of Court to serve limited discovery prior to a Rule 26(f) conference on several of the non-party ISPs solely to determine the true identities of the Doe Defendants, as well as any other infringers that Plaintiff identifies during the course of this litigation, as Plaintiff's infringement monitoring efforts are on-going and continuing. Therein, Plaintiff requests that the Court enter an order allowing

Plaintiff to serve Rule 45 subpoenas on the ISPs immediately and that the ISPs shall comply with the subpoenas.[1]

If the Court grants this Motion, Plaintiff will serve subpoenas on the ISPs requesting the identifying information.  If the ISPs cannot themselves identify one or more of the Doe Defendants but can identify an intermediary ISP as the entity providing online services and/or network access to such Defendants, Plaintiff will then serve a subpoena on that ISP requesting the identifying information for the relevant Doe Defendants.  In either case, these ISPs will be able to notify their subscribers that this information is being sought, and, if so notified, each Defendant will have the opportunity to raise any objections before this Court.  Thus, to the extent that any Defendant wishes to object, he or she will be able to do so.

## II. ARGUMENT

### A.  PRECEDENTS OF COURTS ALLOWING DISCOVERY TO IDENTIFY DOE DEFENDANTS

Courts routinely allow discovery to identify "Doe" defendants.  See, e.g., Murphy v. Goord, 445 F.Supp.2d 261, 266 (W.D.N.Y. 2006) (in situations where the identity of alleged defendants may not be known prior to the filing of a complaint, the plaintiff should have an opportunity to pursue discovery to identify the unknown defendants); Wakefield v. Thompson, 177 F.3d 1160, 1163 (9th Cir. 1999) (error to dismiss unnamed defendants given possibility that identity could be ascertained through discovery); Valentin v. Dinkins, 121 F.3d 72, 75-76 (2d Cir. 1997) (plaintiff should have been permitted to conduct discovery to reveal identity of

---

[1] Because Plaintiff does not currently know the identity of any of the Defendants, Plaintiff cannot ascertain any of the Defendants' position on this Motion or serve any of the Defendants with this Motion.

defendant); Dean v. Barber, 951 F.2d 1210, 1215 (11th Cir. 1992) (error to deny plaintiff's

motion to join John Doe defendant where identity of John Doe could have been determined

through discovery); Munz v. Parr, 758 F.2d 1254, 1257 (8th Cir. 1985) (error to dismiss claim

merely because defendant was unnamed; "Rather than dismissing the claim, the court should

have ordered disclosure of Officer Doe's identity"); Gillespie v. Civiletti, 629 F.2d 637, 642 (9th

Cir. 1980) ("where the identity of alleged defendants [are not] known prior to the filing of a

complaint . . . the plaintiff should be given an opportunity through discovery to identify the

unknown defendants"); Maclin v. Paulson, 627 F.2d 83, 87 (7th Cir. 1980) (where "party is

ignorant of defendants' true identity . . . plaintiff should have been permitted to obtain their

identity through limited discovery"); Equidyne Corp. v. Does 1-21, 279 F. Supp. 2d 481, 483 (D.

Del. 2003) (allowing pre-Rule 26 conference discovery from ISPs to obtain identities of users

anonymously posting messages on message boards).

     In similar copyright infringement cases brought by motion picture studios and record

companies against Doe defendants, courts have consistently granted plaintiffs' motions for leave

to take expedited discovery to serve subpoenas on ISPs to obtain the identities of Doe

Defendants prior to a Rule 26 conference. See Warner Bros. Records, Inc. v. Does 1-6, 527

F.Supp.2d 1, 2 (D.D.C. 2007) (allowing plaintiffs to serve a Rule 45 subpoena upon Georgetown

University to obtain the true identity of each Doe defendant, including each defendant's true

name, current and permanent addresses and telephone numbers, email address, and Media

Access Control ("MAC") address) (citing Memorandum Opinion and Order, UMG Recordings,

Inc. v. Does 1-199, No. 04-093(CKK) (D.D.C. March 10, 2004); Order, UMG Recordings v.

Does 1-4, 64 Fed. R. Serv. 3d (Callaghan) 305 (N.D. Cal. March 6, 2006)).

In fact, for the past few years, this Court and federal district courts throughout the country have granted expedited discovery in Doe Defendant lawsuits that are factually similar to the instant lawsuit.  See, e.g., K-Beech, Inc. v. John Does 1-32, Civil Action No. DKC 11-1764, Doc. No. 4 (Order of July 5, 2011) (D. Md.) (Chasanow, C.J.); Digital Content, Inc. v. Does 1-37, Civil Action No. 10-cv-03403-AW, Doc. No. 7 (Order of December 15, 2010) (D. Md.) (Williams, Jr., J.).[2]  In these cited cases and others like them, copyright holder plaintiffs have obtained the identities of P2P network users from ISPs through expedited discovery using information similar to that gathered by Plaintiff in the instant case, and they have used that information as the basis for their proposed subpoenas to these ISPs.

Courts consider the following factors when granting motions for expedited discovery to identify anonymous Internet users:  (1) whether the plaintiff can identify the missing party with sufficient specificity such that the Court can determine that defendant is a real person or entity who could be sued in federal court; (2) all previous steps taken by the plaintiff to identify the Doe Defendant; and (3) whether the plaintiff's suit could withstand a motion to dismiss. Columbia Ins. Co. v. Seescandy.com, 185 F.R.D. 573, 578-80 (N.D. Cal. 1999); see also Rocker Mgmt. LLC v. John Does, No. 03-MC-33 2003 WL 22149380, *1-2, (N.D. Cal. 2003) (applying

---

[2] See also Arista Records LLC v. Does 1-19, 551 F. Supp. 2d 1, 7 (D.D.C. Apr. 28, 2008) (Kollar-Kotelly, J.); Metro-Goldwyn-Mayer Pictures Inc., et al. v. Does 1-10, Case No. 04-2005 (D.D.C.) (Robertson, J.); Twentieth Century Fox Film Corporation, et al. v. Does 1-9, Case No. 04-2006 (D.D.C.) (Sullivan, J.); Lions Gate Films, Inc., et al. v. Does 1-5, Case No. 05-386 (D.D.C.) (Sullivan, J.); UMG Recordings, et al. v. Does 1-199, Case No. 04-093 (D.D.C.) (Kollar-Kotelly, J.); Worldwide Film Entertainment LLC v. Does 1-749, Case No. 10-38 (D.D.C.) (Kennedy, Jr., J.); G2 Productions LLC v. Does 1-83, Case No. 10-41 (D.D.C.) (Kollar-Kotelly, J.); Achte/Neunte Boll Kino Beteiligungs GMBH & CO KG v. Does 1- 4,577, Case No. 10-453 (D.D.C.) (Collyer, J.); West Bay One, Inc. v. Does 1- 2,000, Case No. 10-481 (D.D.C.) (Bates, J.); Call of the Wild Movie, LLC v. Does 1-358, Case No. 10-455 (D.D.C.) (Urbina, J.); Maverick Entertainment Group, Inc. v. Does 1-1,000, Case No. 10-569 (D.D.C.) (Leon, J.); Voltage Pictures, LLC v. Does 1-5,000, Case No. 10-00873 (D.D.C.) (Urbina, J.); Cornered, Inc. v. Does 1-2,177, Case No. 10-1476 (D.D.C.) (Kollar-Kotelly, J.); Donkeyball Movie, LLC v. Does 1-171, Case No. 10-1520 (D.D.C.) (Sullivan, J.).

Seescandy.com standard to identify persons who posted libelous statements on Yahoo! message board; denying request for expedited discovery where the postings in question were not libelous). Plaintiff here is able to demonstrate each one of these factors.

Overall, courts have wide discretion in discovery matters and have also allowed expedited discovery when "good cause" is shown.  See Warner Bros. Records, Inc. v. Does 1-6, 527 F.Supp.2d 1, 2 (D.D.C. 2007); Semitool, Inc. v. Tokyo Electron Am., Inc., 208 F.R.D. 273, 275-76 (N.D. Cal. 2002); Qwest Comm. Int'l, Inc. v. WorldQuest Networks, Inc., 213 F.R.D. 418, 419 (D. Colo. 2003); Entm't Tech. Corp. v. Walt Disney Imagineering, No. Civ. A. 03-3546, 2003 WL 22519440, at *4 (E.D. Pa. Oct. 2, 2003) (applying a reasonableness standard: "a district court should decide a motion for expedited discovery on the entirety of the record to date and the reasonableness of the request in light of all of the surrounding circumstances") (quotations omitted); Yokohama Tire Corp. v. Dealers Tire Supply, Inc., 202 F.R.D. 612, 613-14 (D. Ariz. 2001) (applying a good cause standard).

B.  OVERVIEW OF PLAINTIFF'S ALLEGATIONS AND FACTUAL SHOWINGS

As alleged in the Complaint, the Doe Defendants, without authorization, used an online media distribution system to download the copyrighted Motion Picture and distribute it to other users on the P2P network, including by making the copyrighted Motion Picture for which Plaintiff holds the exclusive sale and distribution rights available for distribution to others.  See Complaint (Doc. No. 1) at ¶12.  In the instant case, Plaintiff has engaged Guardaley, Limited ("Guardaley"), a provider of online anti-piracy services for the motion picture industry, to monitor this infringing activity.  See Declaration of Ben Perino ("Perino Decl."), ¶¶ 1-2, 10 [attached to this Motion as Exhibit A]; see also Declaration of Patrick Achache ("Achache Decl.") ¶ 1, 6-7 [attached to this Motion as Exhibit B].

5

1.   <u>Overview of the P2P Infringing Activity</u>

The Internet is a vast collection of interconnected computers and computer networks that communicate with each other.  Perino Decl., ¶ 4.  It allows hundreds of millions of people around the world to freely and easily exchange ideas and information, including academic research, literary works, financial data, music, audiovisual works, graphics, and an unending and ever-changing array of other data.  <u>Id.</u>  Unfortunately, the Internet also has afforded opportunities for the wide-scale infringement of copyrighted motion pictures.  <u>Id.</u>  Once a motion picture has been transformed into an unsecured digital format, it can be copied further and distributed an unlimited number of times over the Internet, without significant degradation in picture or sound quality.  <u>Id.</u>

To copy and distribute copyrighted motion pictures over the Internet, many individuals use online media distribution systems or so-called P2P networks.  <u>Id.</u> at ¶ 5.  P2P networks, at least in their most common form, are computer systems that enable Internet users to (1) make files (including motion pictures) stored on each user's computer available for copying by other users; (2) search for files stored on other users' computers; and (3) transfer exact copies of files from one computer to another via the Internet.  <u>Id.</u>

At any given moment and depending on the particular P2P network involved, anywhere from thousands to millions of people, either across the country or around the world, unlawfully use the P2P network to connect to one another's computers to upload (distribute) or download (copy) copyrighted material.  <u>Id.</u> at ¶ 6.  The P2P systems represent a "viral" distribution of digital files: each user of the system who copies a digital file from another user can then distribute the file to still other users and so on, so that copies of an infringing file can be distributed to millions of people worldwide with breathtaking speed.  <u>Id.</u>

6

Further, a person who uses a P2P network is free to use any alias (or "network name") whatsoever, without revealing his or her true identity to other users.  Perino Decl., ¶ 6.  Thus, while Plaintiff has observed the infringement occurring on the Internet, it does not know the true identities of those individuals who are committing the infringement.  Id.

Additionally, the P2P methodologies for which Guardaley monitored for Plaintiff's Motion Picture make even small computers with low bandwidth capable of participating in large data transfers across a P2P network.  Perino Decl., ¶ 7; Achache Decl., ¶ 4.  The initial file-provider intentionally elects to share a file using a P2P network.  Id.  This is called "seeding." Id.  Other users ("peers") on the network connect to the seeder to download.  Id.  As additional peers request the same file, each additional user becomes a part of the network (or "swarm") from where the file can be downloaded.  See id.  However, unlike a traditional peer-to-peer network, each new file downloader is receiving a different piece of the data from each user who has already downloaded that piece of data, all of which pieces together comprise the whole.  Id. This means that every "node" or peer user who has a copy of the infringing copyrighted material on a P2P network—or even a portion of a copy—can also be a source of download for that infringing file, potentially both copying and distributing the infringing work simultaneously.  Id.

This distributed nature of P2P leads to a rapid viral spreading of a file throughout peer users.  Perino Decl., ¶ 8; Achache Decl., ¶ 5.  As more peers join the swarm, the likelihood of a successful download increases.  Id.  Because of the nature of a P2P protocol, any seed peer who has downloaded a file prior to the time a subsequent peer downloads the same file is automatically a possible source for the subsequent peer so long as that first seed peer is online at the time the subsequent peer downloads a file.  Id.

2.  <u>Preliminary Identification of Defendants</u>

On behalf of Plaintiff, Guardaley engaged in a specific process utilizing its specially designed software technology to identify direct infringers of Plaintiff's copyrights using protocols investigated by Guardley's software on P2P networks.  Achache Decl., ¶ 7; <u>see</u> Perino Decl., ¶ 10.  All of the infringers named as Doe Defendants were identified in the following way: Guardaley software is connected to files of illegal versions of the Motion Picture.  Achache Decl., ¶ 8; see Perino Decl., ¶ 10.  All infringers connected to those files are investigated through downloading a part of the file placed on their computer.  <u>Id.</u>  This evidence is then saved on Guardaley's service.  <u>Id.</u>

Once Guardaley's searching software program identifies an infringer in the way described herein for the Motion Picture for which Plaintiff owns the exclusive licensing and distribution rights, Guardaley obtains the IP address of a user offering the file for download. Achache, ¶ 9; see Perino Decl., ¶ 10.  When available, Guardaley also obtains the user's pseudonym or network name and examines the user's publicly available directory on his or her computer for other files that lexically match Plaintiff's Motion Picture.  <u>Id.</u>  In addition to the file of the motion picture itself, Guardaley downloads or otherwise collects publicly available information about the network user that is designed to help Plaintiff identify the infringer.  <u>Id.</u> Among other things, Guardaley downloads or records for each file downloaded: (a) the time and date at which the file or a part of the file was distributed by the user; (b) the IP address assigned to each user at the time of infringement; and, in some cases, (c) the video file's metadata (digital data about the file), such as title and file size, that is not part of the actual video content, but that is attached to or contained within the digital file and helps identify the content of the file.  <u>Id.</u>

Guardaley then creates evidence logs for each user that store all this information in a database. Id.

An IP address is, in combination with the date, a unique numerical identifier that is automatically assigned to a user by its ISP each time a user logs on to or accesses the network. Achache Decl., ¶ 10.  Each time a subscriber logs on, he or she may be assigned a different (or "dynamic") IP address unless the user obtains from his/her ISP a static IP address.  Id.  ISPs are assigned certain blocks or ranges of IP addresses by the Internet Assigned Numbers Authority ("IANA") or a regional internet registry such as the American Registry for Internet Numbers ("ARIN").  See id.  ISPs keep track of the IP addresses assigned to their subscribers at any given moment and retain such "user logs" for a very limited amount of time, sometimes as little as weeks or even days, before erasing the data they contain.  Achache Decl., ¶ 10; Perino Decl., ¶ 12.  These user logs provide the most accurate—and often the only—means to connect an infringer's identity to its infringing activity.  Achache Decl., ¶ 10.

Although users' IP addresses are not automatically displayed on the P2P networks, any user's IP address is readily identifiable from the packets of publicly available data being exchanged.  Achache Decl., ¶ 11.  The exact manner in which Guardaley determines a user's IP address varies by P2P network.  Id.

An infringer's IP address is significant because it is becomes a unique identifier that, along with the date and time of infringement, specifically identifies a particular computer using the Internet.  Achache, ¶ 12.  However, the IP address does not enable Guardaley to ascertain with certainty the exact physical location of the computer or to determine the infringer's identity. Id.  It only enables Guardaley to trace the infringer's access to the Internet to a particular ISP. Id.  Subscribing to and setting up an account with an ISP is the most common and legitimate way

for someone to gain access to the Internet.  <u>Id.</u>  An ISP can be a telecommunications service provider such as Verizon, an Internet service provider such as America Online, a cable Internet service provider such as Comcast, or even an entity such as a university that is large enough to establish its own network and link directly to the Internet.  <u>Id.</u>

Here, the IP addresses Guardaley identified for Plaintiff enable Guardaley to determine which ISP was used by each infringer to gain access to the Internet.  Achache Decl., ¶ 13. Publicly available databases located on the Internet list the IP address ranges assigned to various ISPs.  <u>Id.</u>  However, some ISPs lease or otherwise allocate certain of their IP addresses to other unrelated, intermediary ISPs.  <u>Id.</u>  Since these ISPs consequently have no direct relationship— customer, contractual, or otherwise—with the end-user, they are unable to identify the Doe Defendants through reference to their user logs, but they can identify the intermediary ISP to which that IP address has been allocated.  <u>Id.</u>  The intermediary ISPs' own user logs, therefore, should permit identification of the Doe Defendants.  <u>Id.</u>

Guardaley determined that the Doe Defendants here were using ISPs listed in <u>Exhibit A</u> to Plaintiff's Complaint, together with various other ISPs operating both within and outside Maryland, to gain access to the Internet and distribute and make available for distribution and copying Plaintiff's copyrighted motion picture.  Achache Decl., ¶ 13.  Plaintiff specifically requests leave to conduct discovery on all of the Doe Defendants it has been able to identify to date, as well as any other infringers that Plaintiff identifies during the course of this litigation, as Plaintiff's infringement monitoring efforts are on-going and continuing.  Perino Decl., ¶ 13; Achache Decl., ¶ 18.

Guardaley then downloaded the motion picture file, or a substantial part of it, and other identifying information described above and created evidence logs for each Doe Defendant.

Achache Decl., ¶ 14; see Perino Decl., ¶ 10.  Once Guardaley identified the ISP used by the Doe Defendants to gain access to the Internet from the IP address, an e-mail was sent to the relevant contact at each ISP informing them of the Doe Defendant's IP address and the date and time of the infringing activity.  Achache Decl., ¶ 14.  That e-mail message requested that each ISP retain the records necessary to identify its subscriber who was assigned that IP address at that date and time.  Id.  Once provided with the IP address, plus the date and time of the infringing activity, the Doe Defendant's ISPs quickly and easily can use their respective subscriber logs to identify the name and address of the ISP subscriber who was assigned that IP address at that date and time.  Id.

Lastly, Guardaley confirms that the digital audiovisual files it downloaded are actual copies of Plaintiff's Motion Picture.  Achache Decl., ¶ 16.  It is possible for digital files to be mislabeled or corrupted; therefore, Guardaley (and accordingly, Plaintiff) does not rely solely on the labels and metadata attached to the files themselves to determine which motion picture is copied in the downloaded file, but also to confirm through a visual comparison between the downloaded file and the Motion Picture themselves.  Id.

As to Plaintiff's copyrighted Motion Picture, as identified in the Complaint, a member of Guardaley watches a DVD copy of the Motion Picture provided by Plaintiff.  Achache Decl., ¶ 17.  After Guardaley identified the Doe Defendants and downloaded the motion pictures they were distributing, Guardaley opened the downloaded files, watched them and confirmed that they contain a substantial portion of the motion picture identified in the Complaint.  Id.

C.  PLAINTIFF HAS SHOWN GOOD CAUSE FOR THE DISCOVERY AND HAS

   MADE A PRIMA FACIE SHOWING THAT DEFENDANTS DID INFRINGE

   PLAINTIFF'S COPYRIGHTS.

First, Plaintiff has sufficiently identified the Doe Defendants through the unique IP address each Doe Defendant was assigned at the time of the unauthorized distribution of the copyrighted Motion Picture.  See Columbia Ins. Co. v. Seescandy.com, 185 F.R.D. at 578-80. These Defendants gained access to the Internet through their respective ISPs (under cover of an IP address) only by setting up an account with the various ISPs.  The ISPs can identify each Defendant by name through the IP address by reviewing its subscriber activity logs.  Thus, Plaintiff can show that all Defendants are "real persons" whose names are known to the ISP and who can be sued in federal court.

Second, Plaintiff has specifically identified the steps taken to identify Defendants' true identities.  Plaintiff has obtained each Defendant's IP address and the date and time of the Defendant's infringing activities, has traced each IP address to specific ISPs, and has made copies of the Motion Picture each Defendant unlawfully distributed or made available for distribution.  Therefore, Plaintiff has obtained all the information it possibly can about the Defendants without discovery from the ISPs.

Third, Plaintiff has asserted a prima facie claim for direct copyright infringement in its Complaint that can withstand a motion to dismiss.  Specifically, Plaintiff has alleged that: (a) it owns the exclusive rights under the registered copyright for the Motion Picture, and (b) the Doe Defendants copied or distributed the copyrighted Motion Picture without Plaintiff's authorization.  See Complaint, ¶¶ 9-15.  These allegations state a claim for copyright infringement.  See 17 U.S.C. §106(1)(3); In re Aimster Copyright Litig., 334 F.3d 643, 645 (7th

Cir. 2003), cert. denied, 124 S. Ct. 1069 (2004) ("Teenagers and young adults who have access

to the Internet like to swap computer files containing popular music.  If the music is copyrighted,

such swapping, which involves making and transmitting a digital copy of the music, infringes

copyright."); A & M Records, Inc. v. Napster, Inc., 239 F.3d 1004, 1014-15 (9th Cir. 2001)

("Napster users who upload file names to the search index for others to copy violate plaintiffs'

distribution rights. Napster users who download files containing copyrighted music violate

plaintiffs' reproduction rights").

Here, good cause exists because ISPs typically retain user activity logs containing the

information sought for only a limited period of time before erasing the data.  If that information

is erased, Plaintiff will have no ability to identify the Defendants, and thus will be unable to

pursue its lawsuit to protect its copyrighted work.  Where "physical evidence may be consumed

or destroyed with the passage of time, thereby disadvantaging one or more parties to the

litigation," good cause for discovery before the Rule 26 conference exists.  Qwest Comm.,  213

F.R.D. at 419; see also Pod-Ners, LLC v. Northern Feed & Bean of Lucerne LLC, 204 F.R.D.

675, 676 (D. Colo. 2002) (allowing discovery prior to Rule 26 conference to inspect items in

defendant's possession because items might no longer be available for inspection if discovery

proceeded in the normal course).

Good cause exists here for the additional reason that a claim for copyright infringement

presumes irreparable harm to the copyright owner.  See UMG Recordings, Inc. v. Doe, 2008 WL

4104214 (N.D. Cal. 2008) (finding good cause for expedited discovery exists in Internet

infringement cases, where a plaintiff makes a prima facie showing of infringement, there is no

other way to identify the Doe defendant, and there is a risk an ISP will destroy its logs prior to

the conference); Melville B. Nimmer & David Nimmer, Nimmer on Copyright, § 14.06[A], at

14-03 (2003); <u>Elvis Presley Enter., Inc. v. Passport Video</u>, 349 F.3d 622, 631 (9th Cir. 2003).

The first and necessary step that Plaintiff must take to stop the infringement of its valuable

copyrights and exclusive licensing and distribution rights is to identify the Doe Defendants who

are copying and distributing the Motion Picture.  This lawsuit cannot proceed without the limited

discovery Plaintiff seeks because the ISPs are the only entities that can identify the otherwise

anonymous Defendants.  Courts regularly permit early discovery where such discovery will

"substantially contribute to moving th[e] case forward."  <u>Semitool</u>, 208 F.R.D. at 277.

      Finally, Defendants have no legitimate expectation of privacy in the subscriber

information they provided to the ISPs much less in downloading and distributing the copyrighted

Motion Picture without permission.  See <u>Interscope Records v. Does 1-14</u>, 558 F. Supp. 2d 1176,

1178 (D. Kan. 2008) (a person using the Internet to distribute or download copyrighted music

without authorization is not entitled to have their identity protected from disclosure under the

First Amendment); <u>see also Arista Records LLC v. Does 1-19</u>, 551 F. Supp. 2d 1, 8-9 (D.D.C.

Apr. 28, 2008) (Kollar-Kotelly, J.) (finding that the "speech" at issue was that doe defendant's

alleged infringement of copyrights and that "courts have routinely held that a defendant's First

Amendment privacy interests are exceedingly small where the 'speech' is the alleged

infringement of copyrights"); <u>Guest v. Leis</u>, 255 F.3d 325, 336 (6th Cir. 2001) ("computer users

do not have a legitimate expectation of privacy in their subscriber information because they have

conveyed it to another person—the system operator"); <u>Sony Music Entm't, Inc. v. Does 1–40</u>,

326 F. Supp. 2d 556, 566 (S.D.N.Y. 2004) ("defendants have little expectation of privacy in

downloading and distributing copyrighted songs without permission"); <u>Arista Records, LLC v.

Doe No. 1</u>, 254 F.R.D. 480, 481 (E.D.N.C. 2008); <u>U.S. v. Hambrick</u>, 55 F. Supp. 2d 504, 508

(W.D. Va. 1999), aff'd, 225 F.3d 656 (4th Cir. 2000).  This is because a person can have no

legitimate expectation of privacy in information he or she voluntarily communicates to third parties.  See, e.g., Smith v. Maryland, 442 U.S. 735, 743-44 (1979); U.S. v. Miller, 425 U.S. 435, 442-43 (1976); Couch v. U.S., 409 U.S. 322, 335-36 (1973); Guest v. Leis, 255 F.3d at 335; U.S. v. Kennedy, 81 F. Supp. 2d 1103, 1110 (D. Kan. 2000); U.S. v. Hambrick, 55 F. Supp. 2d at 508.

Although Defendants copied and distributed the Motion Picture without authorization using fictitious user names, their conduct was not thus anonymous.  Using publicly available technology, the unique IP address assigned to each Defendant at the time of infringement can be readily identified.  When Defendants entered into a service agreement with the ISPs, they knowingly and voluntarily disclosed personal identification information to it.  As set forth above, this identification information is linked to the Defendant's IP address at the time of infringement, and recorded in the ISP's respective subscriber activity logs.  Because Defendants can, as a consequence, have no legitimate expectation of privacy in this information, this Court should grant Plaintiff leave to seek expedited discovery of it.  Absent such leave, Plaintiff will be unable to protect its copyrighted Motion Picture from continued infringement.

Where federal privacy statutes authorize disclosure pursuant to a court order, courts have held that a plaintiff must make no more than a showing of relevance under the traditional standards of Rule 26.  See Laxalt v. McClatchy, 809 F.2d 885, 888 (D.C. Cir 1987) (court found "no basis for inferring that the statute replaces the usual discovery standards of the FRCP . . . with a different and higher standard"); Pleasants v. Allbaugh, 208 F.R.D. 7, 12 (D.D.C. 2002); accord Lynn v. Radford, No. 99-71007, 2001 WL 514360, at *3 (E.D. Mich. 2001); Gary v. United States, No. 3:97-CV-658, 1998 WL 834853, at *4 (E.D. Tenn.); see also In re Gren, 633 F.2d 825, 828 n.3 (9th Cir. 1980) ("court order" provision of Fair Credit Reporting Act requires only "good faith showing that the consumer records sought are relevant") (internal quotation

omitted).  Plaintiff clearly has met that standard, as the identity of Defendants is essential to

Plaintiff's continued prosecution of this action.


III. CONCLUSION

For the foregoing reasons, Plaintiff respectfully submits that the Court should grant the

Motion for Leave to Take Discovery Prior to Rule 26 Conference and enter an Order

substantially in the form of the attached Proposed Order.  Plaintiff requests permission to serve a

Rule 45 subpoena on the ISPs it has identified as of this date, and those it identifies in the future,

so that the ISPs can divulge the true name, address, telephone number, e-mail address, and MAC

address of each Doe Defendant that Plaintiff has identified to date, and those it identifies in the

future during the course of this litigation and an order that the ISPs shall comply with the

subpoenas.  To the extent that any ISP, in turn, identifies a different entity as the ISP providing

network access and online services to the Doe Defendants, Plaintiff also seeks leave to serve, on

any such later identified ISP, limited discovery sufficient to identify the Doe Defendant prior to

the Rule 26 conference.

Plaintiff will only use this information to prosecute its claims.  Without this information,

Plaintiff cannot pursue its lawsuit to protect its Motion Picture from past and ongoing, repeated

infringement.

16

Respectfully submitted,
CINETEL FILMS, INC.
FAMILY OF THE YEAR PRODUCTIONS, LLC

DATED:  November 21, 2011

By:    /s/ _____
       Thomas M. Dunlap, MSB #27525
       DUNLAP, GRUBB & WEAVER, PLLC
       5335 Wisconsin Avenue NW, Suite 440
       Washington, D.C. 20015-2052
       Telephone: 202-316-8558
       Facsimile: 202-318-0242
       tdunlap@dglegal.com
       *Attorney for the Plaintiffs*