IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| CINETEL FILMS, INC., | * | |
| | * | |
| and | * | |
| | * | |
| FAMILY OF THE YEAR | * | |
| PRODUCTIONS, LLC, | * | Civil No. JFM 8:11-cv-02438 |
| *Plaintiffs*, | * | |
| | * | |
| v. | * | |
| | * | |
| DOES 1–1,052, | * | |
| *Defendants*. | * | |

******

OPINION

Plaintiffs, CineTel Films, Inc. ("CineTel") and Family of the Year Productions, LLC ("Family"), (collectively, "plaintiffs"), filed a complaint in this court on August 11, 2011 against unidentified John Doe defendants 1–1,052,[1] seeking monetary and injunctive relief for copyright infringement pursuant to 17 U.S.C. § 101, et seq.  Pending before the court are (1) Motions to Sever filed by Does 128, 465, 514 (ECF Nos. 13, 42, 46); (2) Motions to Quash or Modify Plaintiffs' Subpoena, filed by Does 91, 97, 122, 128, 155, 156, 173, 168, 177, 234, 290, 337, 339, 371, 465, 469, 499, 514, 571, 597, 642 (ECF Nos. 14, 11, 7, 13, 34, 25, 24, 29, 27, 21, 22, 23, 36, 28, 42, 49, 43, 46, 54, 62, 58) and five by unnumbered, unidentified Doe defendants (ECF Nos. 19–20, 26, 34, 51); (3) Motions for a Protective Order filed by Does 128, 339, 446, 642 (ECF Nos. 13, 35, 52, 58);  (4) Motions to Dismiss filed by Does 128, 339, 465, 514 (ECF Nos. 13, 37, 42, 46), and two by unnumbered, unidentified Doe defendants (ECF Nos. 19–20);

---

[1] On December 28, 2011, plaintiffs filed a notice in this court to voluntarily dismiss the case, without prejudice, against Doe defendants 1–36 and 849–1052.  (ECF No. 9.)  Therefore, Doe defendants 37–848 are the only remaining defendants in this case.

and (5) a Motion to Dismiss Plaintiff CineTel filed by Doe #465 (ECF No. 42).[2]  All issues have

been fully briefed and no oral argument is necessary.  *See* Local Rule 105.6.  For the reasons that

follow, I find joinder of the putative defendants improper and sever claims against all defendants,

except Doe defendant #37, the first Doe defendant listed in Exhibit A to the complaint that has

not been voluntarily dismissed.  All other defendants are hereby dismissed without prejudice.  As

a result, all subpoenas seeking severed defendants' personal identifying information are quashed.

---

[2] Plaintiffs argue that all of these motions should be denied in their entirety because defendants'
lack of identifying information renders the motions procedurally defective.  (Pls.' Opp. Doe #122
Mot. Quash 3, ECF No. 10.)  Both the Federal Rules of Civil Procedure and the District of
Maryland Local Rules require that persons filing papers in this court identify themselves by
name and provide contact information.  *See* Fed. R. Civ. P. 11(a) ("Every . . . written motion, and
other paper must be signed . . . by a party personally if the party is unrepresented.  The paper
must state the signer's address, e-mail address, and telephone number."); Local Rule 102.1.b.i.
("At the bottom of all Court documents, counsel and self-represented litigants shall state their
name, address, telephone number, e-mail and fax number.").  There are, however, times when
personal privacy concerns and other extenuating circumstances allow for anonymous filing.
*See, e.g.*, *Does 1–23 v. Advanced Textile*, 214 F.3d 1058, 1068–69 (9th Cir. 2000) (stating that
parties may "use pseudonyms in the unusual case when nondisclosure of the party's identity is
necessary . . . to protect a person from harassment, injury, ridicule or personal embarrassment")
(internal quotations and citations omitted); *James v. Jacobson*, 6 F.3d 233, 238 (4th Cir. 1993)
("[U]nder appropriate circumstances anonymity may, as a matter of discretion, be permitted.")
This court has established factors to consider in deciding whether to allow anonymous filing,
including, most relevant to this case, "the risk of unfairness to the opposing party from allowing
an action against it to proceed anonymously." *James*, 6 F.3d at 238.  Defendants' motions to
quash subpoenas for the very purpose of protecting their identifying information and motions to
sever based on the nature of the plaintiffs' underlying claims alleged by the plaintiffs should be
allowed to proceed anonymously because assessing these preliminary matters without knowing
defendants' identities causes plaintiffs no harm.  This is by no means a substantive finding that
defendants have a cognizable right of privacy in their identifying subscriber information.  Rather,
it is a procedural decision allowing these early motions to proceed anonymously when there is
little if any harm to the plaintiffs.  As a final point, at least two courts in mass copyright
infringement cases paid particular attention to defendants that *did not* file anonymously.  *See
First Time Videos, LLC v. Does 1–500*, 276 F.R.D. 241, 247 n.7 (N.D. Ill. 2011) ("Indeed, the
Putative Defendants moving this Court to quash subpoenas served on their ISPs for their
identifying information while filing under their own names and addresses reveal just how little
reasonable expectation of privacy may exist when conveying such information to any third party.
Having failed to file anonymously or pseudonymously, these Putative Defendants have very
nearly rendered moot their own motions to quash."); *Achte/Neunte Boll Kino Beteiligungs Gmbh
& Co. v. Does 1–4,577*, 736 F. Supp. 2d 212, 215 (D.D.C. 2010) ("[The defendant] filed his
motion to quash under seal and thus the issue of his identifying information is not moot.").

Finally, the motions to dismiss for lack of personal jurisdiction and to dismiss CineTel as an improper plaintiff are moot because the movants have been severed and dismissed from this action.

BACKGROUND

On August 30, 2011, Plaintiffs CineTel Films, Inc. ("CineTel") and Family of the Year Productions, LLC ("Family") filed a complaint against 1,052 John Doe defendants alleging that defendants used a file-sharing protocol called BitTorrent to illegally obtain plaintiffs' copyrighted pornographic motion picture *I Spit on Your Grave*. (Compl. ¶ 3.) Plaintiffs explain that the BitTorrent protocol differs from the standard peer-to-peer ("P2P") protocol used for such networks as Kazaa and Limewire. (*Id.*) Unlike a P2P protocol, with BitTorrent the illegal download occurs through a piecemeal process. (*Id.*) The initial file-provider shares the original file, known as a "seed," with a torrent network. (*Id.*) Then, through this torrent network, users receive different portions of the file from other "peer" users who have already downloaded the file, eventually obtaining a full and complete copy of the file. (*Id.*) As more and more peers join the network, they form what is collectively known as a "swarm." (*Id.*) The plaintiffs state that as more individuals download the file and thereby join the swarm, the likelihood of new, successful downloads increases. (*Id.* ¶ 4.) Plaintiffs allege the Doe defendants reproduced and/or distributed *I Spit on Your Grave* through this piecemeal process, thereby willfully and intentionally infringing on plaintiffs' exclusive rights. (Compl. ¶ 12.)

Attached to the complaint is a chart listing the Internet Protocol addresses ("IP addresses") of the 1,052 Doe defendants—the only identifying information provided to this court—together with the date and time each defendant allegedly accessed the torrent network for

the purpose of downloading unlawful copies of plaintiffs' copyrighted motion picture.  (Compl. Ex. A, ECF No. 1-1).  On November 28, 2011, the court granted plaintiffs' Motion to Expedite Discovery.  (ECF No. 6.)  In accordance with this court's Order, plaintiffs served Rule 45 subpoenas on the ISPs that provide internet service to the allegedly infringing IP addresses to obtain sufficient identifying information—names, addresses, telephone numbers, and e-mail addresses—to serve Doe defendants with process.  In response, over twenty-five Doe defendants have filed motions to (1) quash or modify plaintiffs' subpoena; (2) secure a protective order; (2) sever the joined defendants; (3) dismiss for lack of personal jurisdiction and improper venue; and/or (4) remove CineTel as a plaintiff.

ANALYSIS

A.  Motions to Sever

Federal Rule of Civil Procedure 20(a)(2) describes the requirements for permissive joinder: "Persons . . . may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action."  Fed. R. Civ. P. 20(a)(2).  If the two requirements are not met, and defendants are deemed improperly joined, the court "on motion or on its own . . . may at any time, on just terms . . . drop a party."  Fed. R. Civ. P. 21.  The Federal Rules make clear that "misjoinder of parties is not a ground for dismissing an action" in its entirety.  *Id*.

The Supreme Court has articulated that "the impulse is toward the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is

strongly encouraged." *See United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966).

Additionally, the Fourth Circuit has held that "Rule 20 grants courts wide discretion concerning

the permissive joinder of parties." *Aleman v. Chugach Support Servs. Inc.*, 485 F.3d 206, 218

n.5 (4th Cir. 2007).  The court cannot ignore Rule 20's requirements, however.  *See Arista*

*Records, LLC v. Does 1–11*, No. 1:07-cv-2828, 2008 WL 4823160, at *4 (N.D. Ohio Nov. 3,

2008) (stating that the court "does not believe that . . . efficiency concerns should supersede the

requirements for joinder set forth in the Federal Rules of Civil Procedure, particularly where, as

here, there are no allegations that the same individual is responsible for multiple instances of

infringement occurring at the identified IP addresses").  I find the requirements of Rule 20 are

not met, and defendants are improperly joined.

     As a preliminary matter, I must address why I find it appropriate, if not preferable, to

reach the joinder issue prior to the Doe defendants' identification.  *See Arista Records,* 2008 WL

4823160, at *4 ("[T]he Court agrees with the various district courts that have decided to reach

the joinder issue prior to identification of the doe defendants.") (collecting cases); *BMG Music v.*

*Does 1–203*, No. Civ. A. 04-650, 2004 WL 953888, at *1 ("Although it would be convenient and

economical (for Plaintiffs) to have this Court preside over Plaintiffs' expedited discovery

request, the Court simply cannot overcome its finding that the Defendants are not properly joined

parties. In light of the Court's continuing conviction that joinder is improper, deferring

consideration of the joinder issue is inappropriate . . . .").  Unlike a personal jurisdiction inquiry,

the court does not need defendants' personal identifying information to evaluate joinder.

Plaintiffs' allegations are sufficient to evaluate whether Rule 20's permissive joinder

requirements are satisfied.

Not only does the court possess the requisite information to address joinder at this stage, but failing to do so raises significant fairness concerns. The Northern District of Ohio provides an excellent description of the adverse practical consequences associated with deferring consideration of joinder:

> [I]f Plaintiffs' Complaint does in fact violate the joinder requirements, Plaintiffs should not be permitted to proceed with their lawsuit until after the procedural defect is rectified. . . . The Federal Rules of Civil Procedure should not be cast aside merely in the name of potential efficiency. . . . [Additionally,] [i]n all likelihood, if the joinder decision were to be postponed, the Court would never have an opportunity to rule on the propriety of Plaintiffs' joinder of the Doe Defendants. *See Sony BMG Music Entm't v. Does 1–5*, No. CV 07–2434 SJO (JCx) (C.D.Cal. Aug. 29, 2007) ("Although Plaintiffs contend that the Defendant Does may question the propriety of joinder after they are identified, it is this Court's experience that an overwhelming majority of cases brought by recording companies against individuals are resolved without so much as an appearance by the defendant, usually through default judgment or stipulated dismissal.") . . . While overworked courts normally would appreciate one less motion to decide, by deferring a ruling on joinder in this case and if, as will be discussed below, the Doe Defendants are misjoined, Plaintiffs would be able to avoid paying $350 filing fees under 28 U.S.C. § 1914(a) for separate actions against each of the improperly joined Defendants. Although the government would not lose a substantial amount of filing fees from this case alone, other courts and commentators have noted that a consequence of postponing a decision on joinder in lawsuits similar to this action results in lost revenue of perhaps millions of dollars and only encourages Plaintiffs . . . to join (or misjoin) as many doe defendants as possible.

*Arista Records*, 2008 WL 4823160, at *5. If the defendants are improperly joined, making the case procedurally defective, plaintiffs should have to cure that defect before the case proceeds. Otherwise, plaintiffs receive a windfall, misjoining defendants and securing all the necessary personal information for settlement without paying more than a one-time filing fee.[3] *See SBO Pictures, Inc. v. Does 1–3036*, No. 11-4220 SC, 2011 WL 6002620, at *4 (N.D. Cal. Nov. 30, 2011) (noting "the potential for coercing unjust settlements from innocent defendants trumps

---

[3] The court also notes that "the risk of inappropriate settlement leverage is enhanced in a case like this involving salacious and graphic sexual content where a defendant may be urged to resolve a matter at an inflated value to avoid disclosure of the content the defendant was accessing." *Raw Films*, 2011 WL 6840590, at *2 n.5.

Plaintiff's interest in maintaining low litigation costs" and that "a consequence of postponing a decision on joinder in lawsuits similar to this action results in lost revenue of perhaps millions of dollars (from lost filing fees) and only encourages [plaintiffs in copyright actions] to join (or misjoin) as many doe defendants as possible") (internal quotation marks and citation omitted).

The issue then is whether joinder is appropriate in this case.  Mass copyright infringement actions naming hundreds of Doe defendants, of the sort presently before the court, have become quite common.  Whether joinder is proper is a central question in most of these cases, and federal courts are divided.  Some courts have held joinder improper. *See, e.g.*, *IO Group, Inc. v. Does 1–435*, No. C 10–4382 SI, 2011 WL 445043, at *3–*6 (N.D. Cal. Feb. 3, 2011); *Elektra Entm't Group, Inc. v. Does 1–9*, No. 04 Civ. 2289 (RWS), 2004 WL 2095581, at *5–*7 (S.D.N.Y. Sept. 8, 2004); *BMG Music*, 2004 WL 953888, at *1 (E.D. Pa. Apr. 2, 2004). Others have held joinder proper.  *See, e.g.*, *Patrick Collins, Inc. v. Does 1–15*, No. 11–cv–02164–CMA–MJW, 2012 WL 415436, at *2–*4 (D. Colo. Feb. 8, 2012); *Digital Sin, Inc. v. Does 1–176*, No. 12–cv–00126 (AJN), 2012 WL 263491, at *5 (S.D.N.Y. Jan. 30, 2012); *Call of the Wild Movie, LLC v. Does 1–1,062*, 770 F. Supp. 2d 332, 342–43 (D.D.C. 2011); *W. Coast Prod., Inc. v. Does 1–5829*, 275 F.R.D. 9, 15–16 (D.D.C. 2011); *K–Beech, Inc. v. Does 1–57*, No. 2:11–cv–358–Ftm-36SPC, 2011 WL 5597303, at *5–*7 (M.D. Fla. Nov. 1, 2011), *Hard Drive Prods., Inc. v. Does 1–55*, No. 11 C 2798, 2011 WL 4889094, at *5 (N.D. Ill. Oct. 12, 2011); *Donkeyball Movie, LLC v. Does 1–171*, No. civ-10–1520(BAH), 2011 WL 1807452, at *4–*5 (D.D.C. May 12, 2011).   I find the former collection of cases more persuasive, despite recent cases in this district that have tended toward the logic of the latter.  *See Third Degree Films, Inc. v. Does 1–108*, No. 11-3007-DKC, 2012 WL 669055, at *4–*5 (D. Md. Feb. 28, 2012); *Third Degree Films, Inc. v. Does 1–118*, No. 11–cv–03006–AW, 2011 WL 6837774, at

*2–*3 (D. Md. Dec. 28, 2011);  *K-Beech, Inc. v. Does 1–22*, No. 11-cv-01774-AW, 2011 WL

6000768, at *2–*3 (D. Md. Nov. 29, 2011); *Patrick Collins, Inc. v. Does 1–22*, No. 11-cv-

01772-AW, 2011 WL 5439005, at *2–*4 (D. Md. Nov. 8, 2011); *Patrick Collins, Inc. v. Does 1–*

*11*, No. 11-cv-01776-AW, 2011 WL 5439045, at *1–*3 (D. Md. Nov. 8, 2011).

        The courts finding misjoinder focused mainly on a deficiency in Rule 20's transactional

component, holding that the Doe defendants' separate and distinct actions did not constitute "the

same transaction, occurrence or series of transactions or occurrences."  Fed. R. Civ. P. 20; *see*

*Arista Records,* 2008 WL 4823160, at *6 ("[M]erely alleging that the Doe Defendants all used

the same ISP and file-sharing network to conduct copyright infringement without asserting that

they acted in concert was not enough to satisfy the same series of transactions requirement under

the Federal Rules."); *Fonovisa, Inc.,* 2008 WL 919701, at *5 ("A review of the record indicates

that the copyright infringement claims alleged against Does 1 through 9 are not logically related

and therefore do not constitute the same transaction or occurrence, or series of transactions or

occurrences.  First, the complaint does not contain any allegation that the nine Defendants are

jointly or severally liable to the sixteen Plaintiffs.  Second, Plaintiffs have failed to allege any

facts tending to show that one or more of the Defendants has actually downloaded songs from

another Defendant, which could conceivably link the Defendants or show they acted in

concert.").  These courts also correctly rejected the argument that the plaintiffs' harms were

sufficiently similar to satisfy Rule 20's transactional requirement.  *See Fonovisa*, 2008 WL

919701, at *5 ("[I]f the transactional test could be satisfied by merely alleging that the plaintiffs

suffered the same harm from alleged violations of their copyrights, 'a copyright plaintiff could

join as defendants any otherwise unrelated parties who independently copy material owned by

the plaintiff . . . . [U]nder this logic, there would be virtually no limit to the number of parties

that could be joined, which would effectively nullify the transactional requirement.") (internal quotations and citations omitted).

Although courts often declined to address Rule 20's second requirement after finding misjoinder on the first requirement, some still evaluated Rule 20's second requirement regarding common questions of law and fact.  This is undeniably a much closer call; however, I concur with the courts finding that although there is a common question of law as to whether the downloading activity constituted unlawful infringement of plaintiffs' copyrights, the reality is that each claim against each Doe involves different facts and defenses.  *See Elektra Entm't*, 2004 WL 2095581, at *7 ("The claims against the different defendants will require separate trials as they may involve separate witnesses, different evidence, and different legal theories and defenses, which could lead to confusion of the jury . . . . Moreover, the Court finds that there will almost certainly [be] separate issues of fact with respect to each Defendants.") (quoting *BMG Music*, 2004 WL 953888, at *1);  *BMG Music*, 2004 WL 953888, at *1 ("Comcast subscriber John Doe 1 could be an innocent parent whose internet access was abused by her minor child, while John Doe 2 might share a computer with a roommate who infringed Plaintiffs' works. John Does 3 through 203 could be thieves, just as Plaintiffs believe.").  Thus, courts hearing these mass copyright infringement cases have found significant issues with at least one, if not both, of the requirements for permissive joinder.

The present case likewise does not support joinder.  As to the transactional requirement, merely alleging that the Doe defendants all used the same ISP, Comcast, and the same file-sharing protocol, BitTorrent, to conduct copyright infringement without any indication that they acted in concert fails to satisfy the "arising out of the . . . same series of transactions or occurrences" requirement.  Fed. R. Civ. P. 20(a)(2)(A).  If the more than 800 Doe defendants

remaining in this case have, in fact, infringed on plaintiffs' copyrights (a fact the court will assume looking at the pleadings most favorable to the non-moving party), each alleged infringement was separate and apart from the others. *See Arista Records,* 2008 WL 4823160, at *6 ("[B]ecause Plaintiffs did not allege that the Doe Defendants caused the *same harm* (rather than the *same type of harm*), joinder is improper.").   Litigating instances of separate but similar conduct defies the purpose of joinder and raises concerns of individual fairness and justice.

In terms of Rule 20's second requirement, common question of law or fact, I understand there is commonality in that plaintiffs have asserted the same count of copyright infringement against all defendants.   However, I cannot ignore or dismiss the significant factual and legal differences unique to the claims against, and defenses raised by, each Doe defendant.   Because of these differences, joinder raises serious fairness concerns.   Even courts denying motions to sever have articulated concerns. *See Third Degree Films,* 2012 WL 669055, at *5 n.5 (denying motion to sever prior to Doe identification, but explicitly noting that "the court is well aware of the legitimate concerns of the Doe Defendants that their defenses will likely vary from each other and thus may invite prejudice because, among other reasons, evidence may well be completely lost in a courtroom buzzing with more than a hundred others sued for downloading the [copyrighted work]") (internal quotation marks omitted).

In an attempt to distinguish the present case from those finding misjoinder, plaintiffs point to several cases, including recent District of Maryland cases, in which the court reasons that specific properties of BitTorrent, the file sharing protocol used in the present case, support joinder.  (Pls.' Opp. Doe Def. #128 Mot. 23, ECF No. 17); *see Third Degree Films,* 2012 WL 669055, at *5 n.4 (stating that BitTorrent's properties distinguish it from other P2P networks and therefore "the issue of permissive joinder in this context is better analyzed in relation to cases

10

that specifically address BitTorrent file-sharing").  A majority of courts, however, have

specifically held that the properties of BitTorrent are insufficient to support joinder.  *See Hard*

*Drive Prods. v. Does 1–188*, 809 F. Supp. 2d 1150, 1163–64 (N.D. Cal. 2011); *Third Degree*

*Films v. Does 1–3577*, No. C-11-02768 (LB), 2011 WL 5374569, at \*3–\*4 (N.D. Cal. Nov. 4,

2011); *Liberty Media Holdings, LLC v. BitTorrent Swarm*, —— F.R.D. ——, 2011 WL 5190048,

at \*2–\*3 (S.D. Fla. Nov. 1, 2011); *Hard Drive Prods., Inc. v. Does 1–30*, No. 2:11cv345, 2011

WL 4915551, at \*2–\*4 (E.D. Va. Oct. 17, 2011); *On the Cheap, LLC v. Does 1–5011*, No. C10–

4472 BZ, 2011 WL 4018258, at \*1 (N.D. Cal. Sept. 6, 2011); *Pacific Century Int'l Ltd. v. Does*

*1–101*, 2011 WL 2690142, at \*2–\*4 (N.D. Cal. July 8, 2011); *Diabolic Video Prods. Inc. v. Does*

*1–2099*, 2011 WL 3100404, at \*3–\*4  (N.D. Cal. May 31, 2011); *Millennium TGA, Inc. v. Does*

*1–21*, 2011 WL 1812786, at \*2–\*3 (N.D. Cal. May 12, 2011); *Lightspeed v. Does 1–1000*, No.

10–cv–5604, 2011 U.S. Dist. LEXIS 35392, at \*6–\*7 (N.D.Ill. Mar. 31, 2011); *Millennium TGA*

*Inc. v. Does 1–800*, No. 10–cv–5603, 2011 U.S. Dist. LEXIS 35406, at \*5–\*7 (N.D.Ill. Mar. 31,

2011); *IO Grp., Inc. v. Does 1–19*, No. 10–03851, 2010 WL 5071605, at \*8–\*12 (N.D.Cal. Dec.

7, 2010); *see also Raw Films v. Does 1–32*, No. 1:11–CV–2939–TWT, 2011 WL 6840590, at \*2

(N.D. Ga. Dec. 29, 2011) (stating authoritatively that "the swarm joinder theory [associated with

the BitTorrent protocol] has been considered by various district courts, the majority of which

have rejected it").

The Northern District of California, where many of these mass copyright infringement

cases are tried, provides an excellent explanation of why the BitTorrent protocol does not meet

Rule 20's transactional requirement:

> Under the BitTorrent Protocol, it is not necessary that each of the Does 1–188
> participated in or contributed to the downloading of each other's copies of the
> work at issue—or even participated in or contributed to the downloading by any
> of the Does 1–188.  Any "pieces" of the work copied or uploaded by any

> individual Doe may have gone to any other Doe or to any of the potentially
> thousands who participated in a given swarm. The bare fact that a Doe clicked on
> a command to participate in the BitTorrent Protocol does not mean that they were
> part of the downloading by unknown hundreds or thousands of individuals across
> the country or across the world.

*Hard Drive Prods.,* 809 F. Supp. 2d at 1163.   While each alleged infringer may have received

pieces of the copyrighted work *I Spit on Your Grave* from various other swarm members, there is

no evidence of any connection between the alleged infringers.  *See id.* ("[E]ven if the IP

addresses at issue in this motion all came from a single swarm, there is no evidence to suggest

that each of the addresses 'acted in concert' with all the others.").  In fact, the alleged downloads

in the present case occurred over a span of several months.  (Compl., Ex. A.); *Raw Films,* 2011

WL 6840590, at *2 ("Downloading a work as part of a swarm does not constitute 'acting in

concert' with one another, particularly when the transactions happen over a long period.")

Passively allowing another individual to upload a piece of a file is a far cry from the "direct

facilitation" plaintiffs would have this court find.  Furthermore, the concerns previously

discussed with regard to Rule 20's second requirement are unchanged by the properties of

BitTorrent.  *See Hard Drive Prods.*, 809 F. Supp. 2d at 1163 ("[N]othing in the BitTorrent

architecture changes the fact that each defendant also will likely have a different defense.").

Thus, after delving thoroughly into the particulars of the BitTorrent technology, I agree with the

views expressed by these courts that BitTorrent provides no greater support for joinder than

earlier P2P protocols.

        Finally, the fact that this case only involves one copyrighted work is irrelevant; whether

the joined Doe defendants downloaded one work, or twenty, does not change the separate and

discrete nature of their activity.  *See Hard Drive Prods.,* 809 F. Supp. 2d at 1161, 1163 (stating

that Rule 20 joinder was improper because "the only commonality between the copyright

infringers of the same work is that each commit[ted] the exact same violation of the law in exactly the same way" and that "merely infringing the same copyrighted work over [a given time] period is not enough [to support joinder]") (internal quotations and citations omitted). While this case may differ from previous cases of its kind in the number of underlying copyrighted works and the torrent protocol used, the relevant facts for joinder are left unchanged—the alleged infringement was committed by unrelated defendants, through independent actions, at different times and locations.

Because I find the requirements of Rule 20(a) are not met, I need not address the protective measures of Rule 20(b), which provide that "the court may issue an order – including an order for separate trials—to protect a party against embarrassment, delay, expense, or other prejudice . . . ." Fed. R. Civ. P. 20(b). I will, however, say briefly that even if plaintiffs had satisfied Rule 20(a)(2)'s conditions for joinder, I would likely still sever the Doe defendants based on my discretionary authority under Rule 20(b) because allowing joinder here is inefficient, raises significant manageability problems, and is unduly prejudicial to the defendants. While some courts have proffered convenience and efficiency concerns as the basis for finding joinder proper, this court, conversely, finds that severance best promotes judicial economy. *Hard Drive Prods., Inc.* at 1164 (stating that permitting joinder would "undermine Rule 20(a)'s purpose of promoting judicial economy and trial convenience because it would result in a logistically unmanageable case").  Joinder in these types of cases "fails to promote trial convenience and expedition of the ultimate determination of the substantive issues" because even though the hundreds of defendants "may have engaged in similar behavior, they are likely to present different defenses."  *Digital Sin, Inc. v. Does 1–5698*, 2011 WL 5362068 at *4; *see also Raw Films*, 2011 WL 6840590, at *2 ("The Defendants alleged to have participated in 'swarm'

infringing often have different and divergent defenses to the copyright violation claims and to allow them to be asserted in a single case would defeat, not enhance, judicial economy."). To maintain any sense of fairness, each individual defendant would have to receive a mini-trial, involving different evidence and testimony. The enormous burden of a trial like this "completely defeat[s] any supposed benefit from the joinder of all Does . . . and would substantially prejudice defendants and the administration of justice." *Hard Drive Prods.*, 809 F. Supp. 2d at 1164.[4]

The policy favoring broad joinder does not mean that the requirements for permissive joinder should be ignored. The plaintiffs have failed to meet Rule 20's two-prong test for permissive joinder. Thus, plaintiffs' joinder of the Doe defendants is improper. Accordingly, with the exception of Doe #37, all remaining Doe defendants are severed from this action.

B. Motions to Quash or Modify Subpoena

As a preliminary matter, the court must address whether the individual Doe defendants have standing to quash or modify a subpoena served not on defendants themselves, but rather on defendants' ISP, Comcast. As a general principle, "'[a] party does not have standing to challenge a subpoena issued to a nonparty unless the party claims some personal right or privilege in the information sought by the subpoena.'" *Third Degree Films, Inc. v. Does 1–108*, No. DKC 11-3007, 2012 WL 669055, at *2 (D. Md. Feb. 28, 2012) (quoting *Robertson v. Cartinhour*, No. AW-09-3436, 2010 WL 716221, at *1 (D. Md. Feb. 23, 2010)). The District of

---

[4] The incredible burden a case like these places on the court cannot be overstated. *See On the Cheap*, 2011 WL 4018258, at *2 ("If I allow this matter to proceed with about 5000 defendants, it will create a logistical nightmare with hundreds if not thousands of defendants filing different motions, including dispositive motions, each raising unique factual and legal issues that will have to be analyzed one at a time."). The burden is further compounded by the fact that the increased work resulting from mass joinder requires no additional payment beyond the one-time $350 filing fee. Plaintiffs therefore in no way compensate financially for this significant drain on judicial resources.

14

Maryland has held that in these types of cases Doe defendants do have standing to quash or

modify subpoenas on the grounds that the subpoena requires disclosing potentially privileged or

otherwise protected matter.  *Id.* at *2 ("However minimal or exceedingly small the Doe

Defendants' interests here are, parties need only have *some* personal right or privilege in the

information sought to have standing to challenge a subpoena to a third party . . . .  Accordingly, it

appears that the Doe Defendants have standing to contest the subpoenas, and their motions to

quash will not be denied on that basis.") (internal quotations and citations omitted).

    Federal Rule of Civil Procedure 45(c)(3) requires that a subpoena be modified or quashed

if, among other things, it "requires disclosure of privileged or other protected matter."  *See* Fed.

R. Civ. P. 45(c)(3)(A)(iii).  Relying on this rule, the Doe defendants argue that they have a First

Amendment privacy interest in their subscriber information, and that the information is

privileged and precluded from being subpoenaed.[5] (*See, e.g.*, Doe #156 Mot. Quash 2, ECF No.

---

[5] Doe #469 also asserts a statutory privacy interest, arguing that the subpoena must be quashed because it violates the Electronic Communications Privacy Act ("ECPA"), 18 U.S.C. § 2701 et seq.  (Doe #469 Mot. Quash, ECF No. 49).  To support this assertion, Doe #469 cites only one case, *In re Subpoena Duces Tecum to AOL, LLC*, 550 F. Supp. 2d 606 (E.D. Va. 2008), which differs significantly from the facts in the present case.  The *AOL* case dealt with quashing a subpoena seeking movant's e-mails, not movant's subscriber information.  Doe #469 also cites § 2702(a)(1) of the ECPA, which provides that "a person or entity providing an electronic communication service to the public shall not knowingly divulge to any person or entity the contents of a communication while in electronic storage by that service."  18 U.S.C. § 2702(a)(1).  While applicable to the e-mail discovery in the *AOL* case, defendant's reliance on this provision to contest the subpoenaed subscriber identification information is misguided.  *See Patrick Collins, Inc. v. Does 1–11*, No. 11-cv-01776-AW, 2011 WL 5439045, at *4 (D. Md. Nov. 8, 2011) ("[Section 2702(a)(1)] does not apply in the instant action, where Plaintiff seeks not the contents of a communication in electronic storage but rather Defendants' names, addresses, telephone numbers, e-mail addresses, and Media Access Control addresses.").  Doe #469 presumably meant to rely on § 2702(a)(3), which discusses restrictions on the disclosure of customer records.  Yet, while § 2702(a)(3) is more applicable, § 2702(c)(6) provides an exception by which an ISP "may divulge a record or other information pertaining to a subscriber or other customer . . . to any person other than a government entity."  18 U.S.C.§ 2702(c)(6).  Therefore, because plaintiffs are not government entities, disclosure of the subpoenaed identifying information is permitted.  *See Patrick Collins*, 2011 WL 5439045, at *4 (finding

25.)  However, this district, among others, has held that, in general, individuals who use the

Internet to download or distribute copyrighted works are engaged in only a limited exercise of

speech and the First Amendment does not necessarily protect such persons' identities from

disclosure.  *See Third Degree Films,* 2012 WL 669055, at *2 ("[W]hatever privacy interest that a

customer may have in the contact information associated with an IP address is minimal at best. . .

. Where the free speech at issue is alleged copyright infringement . . . courts have routinely held

that a defendant's First Amendment privacy interests are exceedingly small.") (internal quotation

marks and citations omitted); *Sony Music Entm't, Inc. v. Does 1–40,* 326 F. Supp. 2d 556, 567

(S.D.N.Y. 2004) (holding that alleged illegal downloaders' First Amendment right to remain

anonymous "must give way to plaintiffs' right to use the judicial process to pursue what appear

to be meritorious copyright infringement claims").  More specifically, courts have consistently

held that Internet subscribers do not have a protected privacy interest in their subscriber

information—including names, addresses, phone numbers, and e-mail address—which they have

already conveyed to their ISPs.  *First Time Videos, LLC v. Does 1–18*, No. 4:11-cv-69-SEB-

WGH, 2011 WL 4079177, at *1 (S.D. Ind. Sept. 13, 2011); *Achte/Neunte*, 736 F. Supp. 2d at 216

(D.D.C. 2010) (collecting cases, including *U.S. v. Kennedy*, Civ. No. 99-4793, 2000 WL

1062039, at *4 (4th Cir. Aug. 3, 2000)).  Consequently, because defendants have already shared

their personal identifying information with their ISPs, they have no reasonable expectation of

---

defendants' claims of statutory privilege under ECPA unavailing and permitting ISPs to disclose
identifying subscriber information); *First Time Videos, LLC v. Does 1–500*, No. 10-c-6254, 2011
WL 3498227, at *4 (N.D. Ill. Aug. 9, 2011) (same).

privacy[6] in this same information now subpoenaed by plaintiffs.  Nor can it be said that this information is privileged as defendants claim it to be.

Doe defendants do not have standing to contest the subpoena on other grounds.  Several defendants, for example, argue that the subpoenas must be quashed to avoid Rule 45's undue burden restriction.  (*See, e.g.,* Doe #128 Mem. Supp. Mot. Quash 13, ECF No. 13; Doe #290 Mot. Quash 1, ECF No. 22.)  Federal Rule of Civil Procedure 45(c)(3) provides that a subpoena must be modified or quashed if, among other things, it "subjects a person to undue burden."  *See* Fed. R. Civ. P. 45(c)(3)(A)(iv).  However, the undue burden contemplated by Rule 45 is one placed on the direct recipient of the subpoena, the ISP in this case, not on third parties such as the Doe defendants.  *See Third Degree Films*, 2012 WL 669055, at *3 ("[The] argument that the subpoena presents an undue burden is unavailing because the subpoena is directed toward the ISPs and not the Doe Defendants and accordingly does not require [the Doe Defendants] to produce any information or otherwise respond.") (quoting *Third Degree Films, Inc. v. Does 1– 118*, No. 11–cv–03006–AW, 2011 WL 6837774, at *3 (D. Md. Dec. 28, 2011); *see also Call of the Wild Movie v. Smith*, 274 F.R.D. 334, 338 (D.D.C. 2011) ("The plaintiff has issued subpoenas to the putative defendants' ISPs, not to the putative defendants themselves. Consequently, the putative defendants face no obligation to produce any information under the subpoenas issued to their respective ISPs and cannot claim any hardship, let alone undue hardship.").

---

[6] Defendants' reasonable expectations are not in any way impacted by the pornographic nature of the copyrighted work at issue in this case.  *See AF Holdings, LLC v. Does 1–162*, No. 11-23036-Civ., 2012 WL 488217, at *4 (S.D. Fla. Feb. 14, 2012) (stating that unique privacy interests, such as "name and shame" issues associated with being tied to a copyright infringement suit for pornography, are not adequate grounds to support quashing a subpoena).

In addition, several defendants filed motions to quash on the grounds that they did not commit the alleged copyright infringement.  (*See, e.g.*, Doe #91 Mot. Quash 1, ECF No. 14; Doe #499 Mot. Quash 1, ECF No. 43.)  Like the undue burden argument, this argument is unavailing. It is a well-established principle that "no matter what reason is given for why a Doe Defendant could not have been the infringer . . . such general denials of liability cannot serve as a basis for quashing a subpoena."  *Third Degree Films*, 2012 WL 669055, at *3 (citing *First Time Videos, LLC v. Does 1–76*, 276 F.R.D. 254, 256 (N.D. Ill. 2011) (listing cases articulating this principle)); *see also Voltage Pictures, LLC v. Does 1–5,000*, —— F.Supp.2d ——, 2011 WL 1807438, at *2 (D.D.C. May 12, 2011); *Call of the Wild Movie,* 274 F.R.D. at 338. While defendants are free to present evidence to corroborate their denial of liability, and then move to dismiss the claims asserted against them, the court cannot quash a subpoena on these grounds. *See Achte/Neunte Boll Kino Beteiligungs Gmbh & Co. v. Does 1–4,577*, 736 F. Supp. 2d 212, 215 (D.D.C. 2010) (stating "denial of liability may have merit, [but] the merits of this case are not relevant to the issue of whether the subpoena is valid and enforceable. In other words, they may have valid defenses to this suit, but such defenses are not at issue at the [discovery] stage of the proceedings"); *Fonovisa, Inc. v. Does 1–9*, No. 07-1515, 2008 WL 919701, at *8 (W.D. Pa. Apr. 3, 2008) (stating that if a defendant "believes that it has been improperly identified by the ISP, [the defendant] may raise, at the appropriate time, any and all defenses, and may seek discovery in support of its defense").

Finally, a few defendants rely erroneously on Federal Rule of Civil Procedure 45(c)(3)(A)(ii) as an alternate basis for quashing plaintiffs' subpoena.  (*See, e.g.*, Doe #371 Mot. Quash 1–2, ECF No. 28.)  Rule 45(c)(3)(A)(ii) states that the court must quash a subpoena when it "requires a person who is neither a party nor a party's officer to travel more than 100 miles

from where that person resides, is employed, or regularly transacts business in person . . . ." Fed. R. Civ. P. 45(c)(3)(A)(ii).  The putative defendants, however, are not parties to plaintiffs' discovery subpoena.  Therefore, they are not required to respond to the subpoena at all, let alone travel away from their homes to do so.

While I find no cognizable privacy interest in defendants' subscriber information to warrant quashing plaintiffs' subpoena, because I find defendants are improperly joined, *see infra* Part C, subpoenas seeking discovery regarding all Doe defendants except for Doe defendant #37 are quashed.

C.  Motions for Protective Order

For good cause, Federal Rule of Civil Procedure 26 permits a court to "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1).  Such protective orders may forbid disclosure altogether, or, among other measures, limit the scope of discovery.  Fed. R. Civ. P. 26(c)(1)(A) & (D).  Several defendants seek protective orders to prevent disclosure of their private, identifying subscriber information.  (*See, e.g.*, Doe #339 Mot. Protective Order, ECF No. 35.)   Courts in these cases have handled protective orders like they have handled motions to quash, finding that "[t]o the extent that the putative defendants seek protective orders to prevent disclosure of private identifying information, the Court has held that the putative defendants' First Amendment rights to anonymity . . . [are] minimal and outweighed by the plaintiff's need for the putative defendants' identifying information in order to protect its copyrights." *Call of the Wild Movie*, 274 F.R.D. at 340.  Here, these motions are moot because as discussed *infra* Part C the movants are severed and dismissed from this action without prejudice.

D.  Motion to Dismiss For Lack of Personal Jurisdiction and Improper Venue

There are significant personal jurisdiction and venue issues that arise in these types of mass copyright infringement.  However, at this point, these issues are moot because they were raised by defendants who have been severed and dismissed from this action.  Should plaintiffs re-file against these severed defendants, or should the remaining Doe defendant, #37, decide to file a motion to dismiss for lack of personal jurisdiction or improper venue, [7] it should be known that the court will only address such motions after Doe identification.  *See Call of the Wild Movie*, 274 F.R.D. at 345 (D.D.C. 2011) ("Although the putative defendants assert that they do not have sufficient contacts with this jurisdiction to justify personal jurisdiction, the Court, as well as the plaintiff, has limited information to assess whether these jurisdictional defenses are valid and to evaluate possible alternate bases to establish jurisdiction.") (internal citations omitted); *Sony Music Entm't*, 326 F. Supp. 2d at 567 ("[W]ithout the identifying information sought by plaintiffs in the . . . subpoena, it would be difficult to assess properly the existence of personal jurisdiction over the Doe defendants.").  The court cannot ascertain whether it has jurisdiction over unidentified individuals.  An IP address and corresponding John Doe number are insufficient to conduct a jurisdictional inquiry.  Assessing whether there are sufficient minimal contacts with the forum, for example, requires specific facts, including residence, employment, and relationship to the forum.

Plaintiffs have not served any of the Doe defendants and therefore have yet to attempt to invoke this court's personal jurisdiction.  Up to this point, the plaintiffs have only secured an

---

[7] As to venue, the copyright venue statute provides that a copyright infringement action may be brought "in any district in which the defendant or his agent resides or may be found."  28 U.S.C. 1400(a).  Thus, as with personal jurisdiction, contesting venue prior to Doe identification is premature.

expedited discovery order and subpoenaed the relevant ISPs in order to personally name the Doe

defendants, serve them with the complaint, and seek to have this court assert personal

jurisdiction over them.  It is only after an opportunity for full jurisdictional discovery, when the

defendants have been named, that the defendants will have the opportunity to file appropriate

motions challenging the court's jurisdiction.  *See W. Coast Prods.*, 275 F.R.D. at 14–15 ("Even

assuming that Movants will ultimately be named as defendants, they will have the opportunity to

assert their jurisdictional defenses once they are served with process, either in their answers or in

pre-answer motions to dismiss."); *Call of the Wild Movie,* 770 F. Supp. 2d at 345–47 ("Given

that the defendants have yet to be identified, the Court believes that evaluating the defendants'

jurisdictional defenses at this procedural juncture is premature.")

E.   Motion to Have Plaintiff CineTel Removed

Standing to bring an action for copyright infringement under 17 U.S.C. § 501(b) requires

actual ownership of the copyright in question.  *See Harper & Row v. Nat'l Enter.*, 471 U.S. 539

(1985); *Feist Publ., Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340 (1991); *Bouchat v. Baltimore*

*Ravens, Inc.*, 241 F.3d 350, 358 (4th Cir. 2000) (stating that in order to establish infringement,

plaintiff must prove: (1) ownership of a valid copyright, and (2) copying by the alleged

defendant).  Defendants aver CineTel has provided no evidence of its copyright interest in *I Spit*

*on Your Grave* beyond its assertion that it is the "owner of the copyrights and/or the pertinent

exclusive rights under copyright in the United States."  (Compl. ¶ 7.)  Thus, defendants argue

CineTel has no standing to sue and should be removed as plaintiff.  (*See, e.g.*, Doe #128 Mot.

Dismiss at 2, ECF No. 13).  This issue is moot because it was raised by defendants who have

been severed and dismissed from this action.

CONCLUSION

For the foregoing reasons, the court severs all Doe defendants, except defendant Doe #37, (the first Doe defendant listed in Exhibit A to the complaint that has not been voluntarily dismissed from the action), from this action.  All other pending motions are denied as moot. This court acknowledges that there are limited options for copyright holders to seek enforcement of their copyrights and remedy harm caused by infringement.  At the same time, however, this court is unwilling to overlook serious procedural deficiencies and fairness concerns to solve the growing problem of enforcing pre-digital-age copyright law in the internet era.


April 4, 2012_____ _____                          _____/s/_____
Date                                                             J. Frederick Motz
                                                                 United States District Judge